[Civ. No. 16586.   First Dist., Div. Two.   Dec. 22, 1955.]

MIRIAM P. WILDER, Respondent, v. ASA V. WILDER, Appellant.

E. C. Mahoney for Appellant.

Phil F. Garvey for Respondent.

KAUFMAN, J.—This is an appeal from a declaratory judgment which determined the right of the parties under a property settlement agreement. The parties herein, Miriam P. Wilder, plaintiff, and respondent, and Asa V. Wilder, defendant and appellant, have been divorced, but this contract was drawn up to settle their rights in community property, and was not a part of the interlocutory divorce decree which was entered on March 20, 1953.

The agreement was entered into on February 11, 1953, and opened with the statement that ''WHEREAS said parties are now and . . . have been husband and wife, and WHEREAS it is the intention and desire of the parties hereto to settle and determine as between themselves all property rights that either has or may have against the other or in the property of either or in the community property of both.'' It was then agreed that sufficient stocks and securities owned by the

parties should be sold and the proceeds applied to the payment of certain bills and obligations, which were specifically set forth, and that shares of stock in the I. X. L. Mining Corporation, Bank of America N. T. & S. A. and International Business Machine Company be sold at the market price within 30 days. If the proceeds from the sale of these stocks provided insufficient funds to meet the obligations set forth in the agreement, then a sufficient number of shares of Pacific Vegetable Oil Corporation stock were to be sold to produce the additional amount necessary. The agreement shows that the number of shares of Pacific Vegetable Oil owned by the parties was 2662. Taxes on real property in Nevada County were listed as one of the items to be paid, as well as Nevada Irrigation District water assessments and taxes then owing and unpaid. Income taxes were nowhere mentioned in the document.

Defendant and appellant in his answer set forth an accounting of the sales of stocks which brought total proceeds of $44,424.26 within the 30-day period provided for in the agreement. In this total was included $1,053.65, the proceeds from the sale of 62 shares of Pacific Vegetable Oil Company stock. Disbursements were set forth, showing that all bills and obligations listed in the agreement had been paid. Half the disbursements were subtracted from half the gross proceeds, leaving a balance of the surplus due respondent of $2,985.71. Out of this appellant paid $887.69, for Mrs. Wilder's 1952 income tax to the federal government and $75.44 for the state income tax. He paid her $2,000 as a partial distribution, and at the time answer was filed sent her a check for the balance of $22.58.

The record shows that the sales of stock were as set forth by appellant in his answer, and the trial judge found that the proceeds from the sale of said stocks was $44,424.26, from which appellant paid the amounts set forth, and also found that all of said items which had been listed in the property settlement agreement were authorized payments.

The trial judge found that only $87.11 of the sum of $741.10 interest paid on a note to the Bank of California was properly paid. Because of the income tax items which were paid for Mrs. Wilder on her half of the community income were paid by appellant in March after the effective date of this agreement and were not authorized by her, the trial court regarded it as a volunteer payment which could not be charged to her half of the surplus. The court found that

authorized deductions amounted to $37,798.85, which taken from the sum of $44,424.26, left a balance of $6,625.41 of which half, or $3,312.70 was respondent's share of the surplus. It was further found that appellant had paid to respondent $2,022.58 of this amount, and that the balance still owing and unpaid was $1,290.12. The sum of $1,290.12 was the sum of $963.13 for state and federal income taxes plus $326.99, one half of the unauthorized interest paid.

It was alleged that appellant had failed to deliver to respondent 1331 shares of Pacific Vegetable Oil Company stock, one half of the 2,662 shares owned by the parties as community property. The record shows that appellant had offered respondent 1,300 shares of the aforesaid stock which she refused to accept, claiming 1,331 shares. During trial the 1,300 shares were delivered to her, and the court found that she was entitled to receive an additional 31 shares which appellant had failed to deliver, that the value per share was $17 or a total of $527. Judgment was therefore rendered against appellant for the sum of $1,290.12, and he was ordered to deliver to respondent 31 shares of Pacific Vegetable Oil Corporation stock, and if such stock could not be had, to pay the value thereof, the sum of $527.

The 62 shares of Pacific Vegetable Oil stock, one half of which were respondent's, had been sold by appellant, and were part of the total of $44,424.26 proceeds, out of which he had paid the bills itemized in the agreement.

It is well established by the evidence in the record that the sale of the 62 shares of Pacific Vegetable Oil Company stock was unauthorized, since the sale of the Bank of America and I. B. M. stock which were first authorized to be sold brought in $15,935.58 and $27,270.35, respectively. Two lots of I. X. L. stock were also sold for $98.94 and $65.74. The total of these sales was $43,370.61, more than sufficient to meet all bills to be paid under the property settlement agreement. It was even more than sufficient to cover the interest item and income tax payments which were disallowed. Therefore, Mrs. Wilder was entitled to have 1331 shares of Pacific Vegetable Oil stock instead of the 1,300 shares which had been tendered to her. However, the proceeds of the sale of the 62 shares of this stock, not having been used in the payment of bills, was fully accounted for by appellant. He remitted to Mrs. Wilder checks for $2,000 and $22.58, both of which she cashed. This sum is in part made up of one half of $1,053.65, the proceeds of the sale of 62 shares of

Pacific Vegetable Oil stock which was sold on March 3, 1953 at $17 per share. Respondent has therefore once received the value of her 31 shares of stock. She had the right, of course, to have received the stock certificates instead of money. The judgment herein decrees that appellant deliver to her 31 shares of this stock, or if it cannot be had, then the value thereof of $527 plus interest from March 11, 1953. The court found the value of the stock to be $17 per share, which is exactly the value at which appellant sold it, and which he paid over to respondent. She has unquestionably once received the full value of the stock. No doubt if it is possible now for appellant to convert this money back into 31 shares of stock, it is possible for respondent to do so. It is not a unique stock, and she has received and accepted its full value as calculated at the date of judgment.

Respondent attempts to justify this part of the judgment by arguing that there is a conflict in the evidence, but points to no evidence that will support the finding that the total of $44,424.26 is made up of the sales of the other stocks without the 62 shares of Pacific Vegetable Oil. The trial judge only found the denials in the appellant's answer untrue. Nothing is said about his affirmative allegations in which he sets forth his accounting in paragraph 4 of the answer. Respondent called the witness Schiefer, vice president of the Bank of California, under section 2055, Code of Civil Procedure. He testified to the sale of the 62 shares of Pacific Vegetable Oil Stock. Appellant was also called by respondent under that section, and he testified to all the sales of stock, exactly as they appear in the accounting set forth in the answer. Respondent attempted to keep out the item of $1,053.65 for the sale of the 62 shares, but it was brought out by appellant's counsel. Respondent says the court found in paragraph 33 that appellant sold certain stocks mentioned in paragraph 10 of the property settlement agreement (which mentioned Pacific Vegetable Oil) and more particularly described in paragraph 4 of plaintiff's complaint (which does not mention Pacific Vegetable Oil) for a total of $44,424.26. Respondent did not offer any evidence on the sale of the stocks except through the witness above mentioned, and contradicted none of the evidence offered by them on these sales. A finding of $44,424.26 as the proceeds of the stock sales cannot be supported by the record without the proceeds from the sale of the 62 shares of Pacific Vegetable Oil.

Since the record shows without contradiction that respondent has once received the full value of 31 shares of Pacific Vegetable Oil Company stock it is clear that this part of the judgment should be stricken out.

█ There appears to be a conflict in the evidence on the interest item. The witness Schiefer testified that the balance of the interest due on the promissory note in the amount of $28,000 was $87.11 on March 2, 1953. Appellant charged an interest item of $741 for this note. The agreement provided that appellant was to pay to the Bank of California a note dated April 30, 1951, in the sum of $30,000 with interest at the rate of 3½ per cent per annum. This note was in the amount of $28,000 at the time of the accounting. The banker testified in regard to installments of principal and interest that had been paid up to the time that the note was paid off. The trial judge was entitled to interpret the agreement to mean that only the current unpaid interest of $87.11 was to be charged, and properly reduced this item by $653.99. One half of this amount or $326.99 was therefore correctly included in the judgment in respondent's favor.

The last items challenged by appellant is the disallowance of the payment of federal income tax in the sum of $887.69 and state income tax in the sum of $75.44. These items were not included in the list of specific bills to be paid from the proceeds of the stock sales. The agreement is an eleven page document, which the record shows was negotiated over a period of at least one year. Both parties were represented by counsel. It covers real estate taxes, water assessments, and even an $11 plumbing bill. The real property of the parties is provided for in detail, as well as furniture, tools, three motor vehicles, certain profit sharing units in a stock and bond company. The agreement is very specific and clear in all its provisions. It is true that in the introductory clauses it is stated that it is the intention and desire of the parties "to settle and determine as between themselves all property rights" in the community property of both. The trial court took the position that the agreement was very specific, had been negotiated for a year by four attorneys, and that if the tax was not set forth it was not one of the items to be paid from the proceeds of the stock sale.

Appellant argues that where there is no extrinsic evidence the construction is simply a question of law, and that the reviewing court is not bound to accept the construction put on the agreement by the trial court, but must determine the

meaning of the agreement as a matter of law. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825] ; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685].)

The agreement must be considered in its entirety (*Streeter* v. *Streeter*, 67 Cal.App.2d 138 [153 P.2d 441]), and therefore, appellant argues, the introductory clause, that it was the intention of the parties to settle *all* their property rights, must control. That is a general expression of intention, it is true, but thereafter they agreed "in consideration of the mutual promises herein contained and other good and valuable consideration" to 24 specific provisions. Paragraph 17 provides for the sale of sufficient stock and securities to pay ten items, ranging from a $30,000 note to a plumbing bill for $11. The general rule is that if a general and specific provision are inconsistent, the specific provision will control. (Rest., Contracts, § 236(c) ; Code Civ. Proc., § 1859.)

The trial judge was therefore justified in making the interpretation that the bills listed and only those, were to be paid from the stock proceeds. Appellant prepared respondent's separate tax return without her authorization and paid it out of these proceeds. It is true that the parties were married all during 1952, the year during which these income taxes accrued. If appellant has any theory on which he may recover these tax payments apart from the property settlement agreement, he has not urged it in his brief, nor did he include any request for affirmative relief in his pleadings, but only asked that plaintiff take nothing. It has been held that in a declaratory relief action where defendants' pleadings have not sought by cross-complaint or otherwise to enlarge the issues which plaintiff tendered, he cannot complain if affirmative relief is not granted to him. (*Ho Gate Wah* v. *Fong Wan*, 118 Cal.App.2d 159, 165 [257 P.2d 674].) The tax items were therefore properly disallowed.

The judgment should therefore be affirmed except as to the provisions regarding the Pacific Vegetable Oil stock which are hereby stricken out and set aside.

Judgment affirmed as modified.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 20, 1956.