[L.A. No. 30384. June 30, 1976.]

NATIONAL INSURANCE UNDERWRITERS,
Plaintiff and Respondent, v.
MAURICE CARTER et al., Defendants and Appellants.

## COUNSEL

Glass, Allen & Moser, Ehrmann & Haile, Bogert, Ehrmann, Halpern, Haile & Buckner and Frances Ehrmann for Defendants and Appellants.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Arne Werchick, Stephen I. Zetterberg, Robert G. Beloud, David B. Baum, Elmer Low, Leonard Sacks, Bruce I. Cornblum and Sanford M. Gage as Amici Curiae on behalf of Defendants and Appellants.

Spray, Gould & Bowers, Daniel O. Howard, Arthur Paul Berg, Grace, Neumeyer & Otto and Alvin E. Domash for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—The case involves the interpretation of provisions of an aircraft liability insurance policy.

Francis and Bernice Thelen were the owners of a small airplane maintained at the Compton Airport. At the insistence of airport officials the Thelens obtained liability insurance coverage for the plane from respondent National Insurance Underwriters (National).

On July 12, 1969, while the policy was in effect, the plane crashed. At the time of the accident the plane's occupants included three nonpaying guests, Ann, Robert and Edward Schroeder, and the pilot, Everett Pavitt, who was using the aircraft with permission of the Thelens. Ann and Robert were killed in the crash, and Edward was injured. A residence owned by Maurice and Della Carter was damaged. The parents of the Schroeder victims instituted a wrongful death action against the Thelens and Pavitt (referred to herein as defendants). The Carters filed suit against defendants seeking recovery for the damage done to their property.

National denied any liability under the policy and filed the present declaratory relief action to determine the extent of its liability, if any. National's motion for summary judgment was granted by the trial court which determined that National was neither obligated to defend the pending actions nor to pay any judgments entered against defendants. Defendants have appealed.

We consider two principal areas of inquiry. Does the policy, fairly read, exclude coverage for accidents occurring while the aircraft is being piloted by persons other than the Thelens? Even if the airplane had been piloted by the Thelens, does the policy extend coverage to passengers? The respective contentions of the parties may be summarized. Defendants argue (1) that the insuring clause specifically provides coverage for permissive users such as Pavitt, and any conflict between this insuring clause and the pilot's exclusion clause must be resolved against National as author of the policy; (2) National was prohibited by law from excluding coverage for permissive users; and (3) to the extent that the Uniform Aircraft Financial Responsibility Act (Pub. Util. Code, § 24230 et seq.) permits exclusion of coverage for nonpaying guest passengers it is unconstitutional. National, in turn, asserts that (1) since the plane was piloted by Pavitt the policy is wholly inapplicable, and (2) in any event, the policy excludes coverage for the Schroeder passengers.

## I.  *The Policy Exclusion.*

■  Defendants rely upon language in the insuring clause of the policy which defines the word "insured" to include ". . . not only the Named Insured but also any person while using or riding in the aircraft . . . provided the actual use is with the permission of the Named Insured." Defendants contend that by incorporation of the foregoing definition the policy thereby extends liability coverage for accidents occurring when the aircraft is piloted by permissive users such as Pavitt.

It is true that the insuring clause refers in broad terms to permissive users. However, in accordance with well established rules of construction we will conclude that it is also true that this general definitional provision must yield to the specific and unambiguous limitation found in the latter part of the policy which explicitly confines coverage to accidents occurring while the plane is piloted by Francis or Bernice Thelen. (See *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; *Burr v. Western States Life Ins. Co.* (1931) 211 Cal. 568 [296 P. 273].)

The policy is not complicated. The definition of the term "insured" upon which defendants rely appears on the first page of the policy in a general section entitled "Part 1—Aircraft Liability," within a special subsection denominated "Persons and Organizations Insured." The paragraph defining the "Insured," of course, is not the entire policy. It must be read in conjunction with other portions thereof. The pilot exclusion clause appears twice in the policy, in printing of size and intensity identical to that of the rest of the policy save only for paragraph headings. First, at page two of the policy, and under the boldface heading designated "EXCLUSIONS," it is provided that "This policy does not apply under Part I [i.e., the insuring clauses]:" followed by a list of exclusions. The last exclusion, designated "H", declares the inapplicability of the policy "while the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 7 'Pilots' of the Declarations." By reason of the foregoing language, the insured was specifically advised in plain and conspicuous language that no coverage is afforded if the aircraft is piloted by an unqualified pilot, as defined by the declarations.

Even in the event of a failure to observe the foregoing exclusion, the "Declarations" section of the policy (a special, partially typewritten sheet inserted into the standard form policy following page 2) sets forth again

in clear and unambiguous language the pilot exclusion clause, thereby giving the insured a second signal. The "Declarations" are of immediate and particular interest to the insured, for they contain the typewritten information specifying the named insureds, the policy period, premium and coverages, a description of the aircraft, and a list of the authorized pilots and their qualifications. The latter provision states: "PILOTS: This policy applies when the aircraft is in flight: (a) only while being operated by the pilot(s) named or designated below, . . ." Immediately beneath this provision are the names "F. H. Thelen" and "Bernice F. Thelen," and the additional language (not pertinent herein) "and any pilot employed by a Fixed Base Operator," together with the requirement that the designated pilot hold a specific type of FAA certificate and a minimum number of pilot flying hours.

Although we have invalidated an exclusionary clause where it is hidden in a subsequent section of the policy bearing no clear relationship to the insuring clause, or concealed in a mass of fine print (see *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]), the pilot exclusion clause in the present policy suffers from neither defect and as a matter of law is conspicuous, both in the exclusion clause and in the "Declarations."

Defendants insist, however, that the policy is ambiguous in that the insuring clause purports to cover all permissive users while the pilot exclusion clause limits, or at the least reduces, such coverage. However, defendants fail to recognize that the two provisions, the insuring and exclusionary language, fulfill two different functions. The insuring provision, on the one hand, has as its purpose the definition of those persons who, in addition to the named insureds, may claim coverage and protection with respect to accidents *to which the policy applies.* The pilot exclusion clause, on the other hand, specifies that *the policy does not apply* unless the plane is piloted by a person named in that clause. The former clause does not purport to touch upon the subject of pilots' qualifications, and the latter clause does not attempt to describe those persons who are deemed to be the "insured." Contrary to the defendants' assumption, the two provisions act independently of each other. They are in harmony while performing different offices.

Even were we to assume, however, for purposes of argument, that the pilot exclusion language restricts coverage which the insuring provision purports to grant, it is difficult to accept the argument that any fatal

ambiguity is thereby established. The insuring clause, in general terms, extends coverage to various "insured" persons, including persons "using or riding in" the aircraft with the Thelens' permission. Yet that clause is, in the specific words of the policy, "*subject to* the . . . exclusions, conditions and other terms of this policy." (Italics added.) As we have seen, the pilot exclusion clause creates a specific exception to the coverage extended in the insuring clause: The policy is wholly inapplicable unless the aircraft is piloted by a person whose name and qualifications are specified in the policy. Under well established principles of contract interpretation, ". . . when a general and particular provision are inconsistent, the latter is paramount to the former." (Code Civ. Proc., § 1859; Civ. Code, § 3534; see *Metzler* v. *Thye* (1912) 163 Cal. 95, 99 [124 P. 721]; *Comunale* v. *Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 201 [253 P.2d 495].) The specific language of the pilot exclusion clause overrides the general coverage provisions of the insuring clause.

The foregoing conclusions are consistent with another controlling principle of contract interpretation. We have stated that "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, *supra*, 46 Cal.2d 423, 432.) We have also said that courts must attempt to ascertain the insured's "reasonable expectations" as to coverage. (E.g., *Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d 263.) It appears self-evident that the Thelens could not reasonably have expected National to afford coverage without regard to the identity and qualifications of those persons entrusted with flying the aircraft. In view of the relatively few persons qualified to fly a plane, and the obvious hazard to the occupants and to the aircraft from flights by unqualified pilots, it is understandable that an insurer would insist on knowing who the proposed pilots were, evaluating their qualifications, and making its policy inapplicable to accidents involving pilots not disclosed to, nor approved by, the insurer. In our view, the pilot exclusion clause is unambiguous and accords with the "reasonable expectations" of the insured.

II. *The Uniform Aircraft Responsibility Act.*

■ Relying upon *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], defendants next urge that if the subject policy is construed as excluding coverage for pilots not specified in the

policy, such an exclusion violated public policy. In *Wildman* we held that an insurer's attempt to exclude permissive users from *automobile* liability insurance protection was contrary to public policy and therefore invalid. We determined that the financial responsibility provisions of the Vehicle Code must be construed as part of every policy of automobile insurance since "the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them . . . ." (P. 39.)

The public policy identified and relied on by us in *Wildman* was gleaned from former sections 415 and 402 of the Vehicle Code (see present Veh. Code, §§ 16450, 17150, respectively) and we stressed the significance of those provisions of section 415 which specifically required that any policy of automobile liability insurance contain coverage for permissive use of the automobile by others. Section 402, in turn, expressly fastened liability on the owner for the negligent operation by a permissive user. (At present, coverage for acts of permissive users is required of an automobile liability insurance policy by virtue of Ins. Code, § 11580.1, enacted in 1970, and Veh. Code, § 16451.)

Unlike the statutory scheme considered by us in *Wildman,* the Uniform Aircraft Financial Responsibility Act (hereafter act)·(Pub. Util. Code, § 24230 et seq.) contains no expression of a. public policy mandating insurance coverage for accidents occurring while the aircraft is piloted by unspecified persons operating the plane with the owner's permission. The act provides merely that an owner is liable for its negligent operation by one flying the plane with the owner's permission (Pub. Util. Code, § 21404), and limits the extent of the owner's exposure in cases not involving principles of vicarious liability (*id.,* § 21404.1). Following any mishap involving an aircraft the act requires the Department of Aeronautics to fix the amount of security needed to satisfy any judgment that may be rendered. (*Id.,* §§ 24300-24302, 24325.) An owner may avoid meeting the requirement for security payment by obtaining a liability insurance policy covering the aircraft. (*Id.,* § 24327, subds. (d), (e).)

A review of the act makes it apparent that, while the statutory scheme therein revealed encourages owners of aircraft to obtain liability insurance coverage, thereby eliminating the necessity for deposit of a security, no public policy is disclosed requiring aircraft owners to provide coverage for all "permissive users" who may operate the aircraft. *Wildman* and the cases following it speak in the context of a statutory

scheme which *expressly* requires certain coverage to be included in every *automobile* insurance policy. In contrast, in the absence of any general declaration of public policy mandating coverage of "permissive users" for aircraft, we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute. (See *Bequette* v. *National Insurance Underwriters, Inc.* (9th Cir. 1970) 429 F.2d 896; *Electron Machine Corp.* v. *American Mercury Insurance Co.* (5th Cir. 1961) 297 F.2d 212.)

### III.   *The Guests.*

■   Defendants contend, finally, that the policy covers the Schroeders, flying in the airplane as guests of the pilot, Pavitt. While conceding that the policy itself clearly and explicitly excludes "passengers," defined by the policy as any persons riding in the aircraft, defendants assert, however, that public policy requires that the provisions of the Aircraft Financial Responsibility Act (Pub. Util. Code, §§ 24230-24410) must be incorporated into all aircraft liability policies in this state. (Cf. *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31.)

The difficulty with the foregoing contention is that the act expressly permits exclusion of nonpaying passengers in aircraft liability policies. (Pub. Util. Code, § 24351, subd. (c).) Defendants maintain, however, that this provision, and the exclusion therein contained, are impermissibly discriminatory since other provisions of the act require coverage for paying passengers. To the contrary, we find nothing in the act mandating such coverage. Section 24350, subdivision (b), which defines the minimum requisites of a liability policy, expressly declares that such a policy must provide coverage for "bodily injury to or death of a person *not a passenger*" in specified amounts. (Italics added.) It is clear that by reason of this provision, *both* paying and nonpaying passengers may be excluded.

Defendants suggest that any legislative scheme which would permit the exclusion of passengers is arbitrary and capricious and violates equal protection principles. We disagree. The Legislature has evinced its continuing concern for the toll of aircraft accidents upon third party victims who, like the Carters, may suffer personal injury or property loss and who have neither foreknowledge of flights of small aircraft, nor opportunity to assess the risks and to insure against them. Coverage for these innocent victims is statutorily imposed by Public Utilities Code

section 24350, subdivision (b). On the other hand, guests and passengers presumably are aware of the enterprise upon which they embark and are thereby fully capable of protecting themselves. Though they may now sue and recover against the owners for injuries suffered as a result of the negligent operation or maintenance of the aircraft, the Legislature has not elected to require that they be covered under a liability insurance policy. In the light of all circumstances, we cannot say that the distinction is without a rational basis. It follows, accordingly, that the act is not violative of equal protection of the laws.

The judgment is affirmed.

Wright, C. J., McComb, J., Sullivan, J., and Clark, J., concurred.

**TOBRINER, J.**—I concur in parts II and III of the majority opinion. I dissent, however, from part I of that opinion insofar as it holds that National's policy does not furnish liability coverage because a permissive user piloted the insured aircraft at the time of the accident. In my opinion, the policy provisions relied upon by the majority are both inconspicuous and ambiguous, and consequently are ineffective to bar coverage.

The insuring language of National's policy expressly extends coverage to permissive users while riding in the insured aircraft. The majority, however, conclude that three widely separated exclusionary provisions operate to bar coverage in all cases in which such a permissive user might seek protection, and thus serve in concert to nullify the explicit protection conferred by the insuring language. As I shall explain, however, an exclusionary clause is effective to preclude coverage only if it is conspicuous, plain and clear; the exclusions in the present policy fail that test. Moreover, the exclusions are ambiguous, and if interpreted to bar all protection for permissive users riding in the aircraft, directly contradict the insuring language of the policy and thus render the policy as a whole equivocal and ambiguous. Established principles of construction require us to resolve such ambiguities in favor of coverage.

1. *The exclusionary clause upon which plaintiff relies is neither conspicuous nor clear.*

Plaintiff's insurance policy unambiguously extends coverage to permissive users. The insuring clause of the first page of the policy provides

that "[t]he Company does hereby agree with the Insured . . . [t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of" various specified occurrences, among which the policy designates accidents like the one in question. On the same first page of the policy and in the same section as the sentence just quoted, appears the following definition, under the heading "Persons and Organizations Insured": "The unqualified word 'Insured' wherever used in Part I of this policy *includes not only the Named Insured but also any person while using or riding the aircraft* and any person or organization legally responsible for its use, *provided the actual use is with the permission of the Named Insured.*" (Italics added.) The insuring clause, read in light of the policy's definition, thus provides coverage for permissive users because the term "insured" "includes . . . any person while using or riding in the aircraft . . . with the permission of the Named Insured." This coverage of permissive users is absolute; nowhere in the definition is there any hint that the permissive user is not insured.

Plaintiff, however, contends that a subsequent exclusion tucked away in the later labyrinth of clauses of the policy eliminates the coverage set forth above. The assertedly effective exclusionary clause appears in a portion of the policy occurring some twenty-one paragraphs after the insuring clause; this provision, the last of eight "exclusions," reads as follows: "This policy does not apply under Part I: . . . H. while the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 7. 'Pilots' [*sic*] of the Declarations." The "Declarations" to which Exclusion H makes reference appears, not on the next page, but on an unnumbered page insertible between pages 2 and 3.[1] Thus plaintiff asserts that a portion of the "Declarations" placed between two pages of the policy, to which the insured is referred by the last of eight exclusions, appearing twenty-one paragraphs after an absolute coverage clause, suffices to deny coverage to the permissive user who is otherwise within the explicit terms of the policy.

We faced a similar attempted exclusion in *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]. There the insurer sought to negate the broad coverage of the first page of the policy

---

[1]As the instructions appearing on page 3 of the policy explain: "Insert Declarations page (Part A) here so that left edge butts against fold on page and permits the 'Named Insured' and 'Address' to appear through the window which is cut in pages 1 and 2."

by an exclusionary clause appearing, obscurely and without relationship to the covering clause, in a subsequent part of the policy.

The language and holding of *Gray* applies here: "The very first paragraph as to coverage, however, provides that 'the company shall defend any such suit against the insured alleging such bodily injury' although the allegations of the suit are groundless, false or fraudulent. This language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause. The relation of the exclusionary clause to this basic promise is anything but clear. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner. The doctrines and cases we have set forth tell us that the exclusionary clause must be 'conspicuous, plain and clear.' (*Steven* v. *Fidelity & Casualty Co.* [(1962)] 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) *This clause is not 'conspicuous' since it appears only after a long and complicated page of fine print, and is itself in fine print; its relation to the remaining clauses of the policy and its effect are surely not 'plain and clear.'* " (Italics added.)

As in *Gray* the alleged exclusionary provision here appears only "after a long and complicated page of fine print and is itself in fine print." Further, in *Gray* we pointed out that the relation of the exclusionary clause to the covering clause in *Gray* was not "plain and clear"; in the instant case it is far less plain or clear. The insured here must take two steps to learn of noncoverage. As I have explained, the first step is the eighth clause of the "Exclusions," labelled "H," which appears much later in the policy. H excludes coverage for *pilots* not qualified under Item 7. The second step is Item 7, which says the "policy applies when the aircraft is in flight . . . only while being operated by the *pilots.named or designated below*," who are the named insured.

But neither H nor Item 7 so much as mentions the coverage clause or the permissive user. These "exclusions" are not related to the permissive user; they do not speak of the permissive user and nowhere exclude him. As in *Gray* "the language of the policy does not clearly define the application of the exclusionary clause to the duty . . ." to provide coverage (*id.,* p. 267). As in *Gray* the insured is misled and the "insured's reasonable expectations" frustrated.

The decisions have consistently held that the exclusionary clause must be "conspicuous, plain and clear." (*Steven* v. *Fidelity & Casualty Co.,* *supra,* 58 Cal.2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284]; accord, e.g., *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 569 [83 Cal.Rptr. 394, 463 P.2d 746]; *Gray* v. *Zurich Insurance Co.,* *supra,* 65 Cal.2d 263, 269; *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

Although the exclusionary clause upon which the insurer relies here is surely not "conspicuous," the insurer well knew how to write a proper exclusionary clause. It did so with respect to passengers. Thus the *insuring section,* which appears at the very commencement of the policy, states that the insurer agrees "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: A—bodily injury . . ., sustained by any person *including or excluding passengers as specified in the Declarations. . . .*" (Italics added.) Alerted to the possible qualifying effect of the Declarations, the reader turns to this portion of the policy specifying "Coverages" to find that the policy covers, in specified amounts "Aircraft Bodily Injury and Property Damages Liability *Excluding* Passengers." (Italics added.) But the insuring section of the policy, specifying coverage of permissive user, does *not* carve out any exclusion as to them or even hint at it.

The contrast between these two exclusionary clauses is the contrast between legally effective and ineffective provisions; the distinction stands firmly rooted in the ability of the merely mortal policyholder to divine the extent of the protection he has purchased.

Moreover, even assuming arguendo that the exclusionary provisions in question do not fail for lack of conspicuousness, such provisions fail for ambiguity.

2. *The provisions of the policy upon which the insurer relies to exclude defendant Pavitt suffer from fatal ambiguity.*

Even assuming that the assertedly effective exclusionary provision is not inconspicuous and obscure, the policy is at best ambiguous as to the coverage of defendant Pavitt. The law as to ambiguities in insurance policies has long been clear: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations omitted.] If semantically permissible, the contract

will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation omitted.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations omitted], the amount of liability [citations omitted], or the person or persons protected [citations omitted], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].) With these precedents in mind I turn to an examination of the exclusionary clauses in question.

As I have shown, Exclusion H indicates that "this policy does not apply under Part I . . . while the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 7." As I have also shown, the permissive user obtains unequivocal coverage under the insuring clause. Thus a policyholder, were he fortunate enough to stumble on exclusionary clause "H," might turn to Item 7 of the "Declarations," seeking the pilot qualifications which the insurer there placed on permissive users. If the hypothetical policyholder did so, however, he would be plunged from curiosity into mystification, for as we have stated, *the policy sets forth no such criteria for permissive users.*[2]

[2]"Item 7: PILOTS
"*Pilots*: This policy applies when the aircraft is in flight:
(a) only while being operated by the pilot(s) named or designated below.
(PILOTS)
F. H. Thelen
Bernice F. Thelen
and any pilot employed by a Fixed Base Operator.
"(b) while holding an F.A.A. pilot certificate at least equal to the type described below and while properly rated for the flight and aircraft.
(PILOT CERTIFICATE)
PRIVATE
STUDENT
Commercial or Airline Transport
"(c) and when having not less than the minimum stated below and dual checkout in model of aircraft insured

| TOTAL PILOT FLYING HOURS | PILOT FLYING HOURS— SAME MAKE/MODEL AS INSURED AIRCRAFT |
|---|---|
| 250 | 60 |
| 20 | 0 |
| 1000 | 2 |

"Except that when the aircraft is operated in flight by a pilot named above or holding 'student' pilot certificate, this policy applies only when such pilot is accompanied by, or

In search of pilot qualifications for permissive users, the reader of this policy instead finds certification and experience criteria for the two Thelens (both of whom receive coverage without reference to the permissive user clause) and for any pilot employed by a "fixed base operator,"[3] but no hint of the appropriate criteria for permissive users. Having failed to set forth *any* pilot standards for permissive users, plaintiff nevertheless argues that it has effectively excluded defendant Pavitt on the basis of pilot qualification criteria. Having insured permissive users in *addition* to the named insured and his spouse, plaintiff contends that it has then excluded permissive users by omission through the device of listing only the qualifications of the named insured and his spouse in the pilot qualification section.

The argument fails because the references from Exclusion H back to the insurance clause and forward to Item 7, which itself is simply silent as to the qualifications for permissive users, at best merely render the policy ambiguous. Even if one charitably assumes for sake of argument that the exclusions clearly and unambiguously bar protection for the permissive user, that assumption serves only to bring the exclusions into direct conflict with the insuring language which clearly and unambiguously extends coverage to the permissive user. A policy with contradictory provisions is by definition ambiguous.

Construing an automobile liability policy which presented a similar equivocation, in seemingly covering and not covering permissive users simultaneously, we have ruled "that the coverage afforded by the policy cannot apply two ways at the same time: it cannot apply *only* when one of the named insureds, or members of their immediate family, are using the car and also when someone else is driving with the consent and permission of the insured. The insurer, having caused the uncertainty and ambiguity which exists in the policy under consideration, must have that ambiguity and uncertainty resolved against it under the well settled rule in this state and elsewhere." (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 37 [307 P.2d 359]; original italics.)

The majority, however, maintain that the contradictory provisions of the insuring and exclusionary clauses create no ambiguity because the exclusions, in their view, prevail over the insuring provisions. They

has received prior flight approval and briefing from, a pilot holding a current and effective F.A.A. Flight Instructor Certificate."

[3] The policy nowhere defines this phrase.

present three arguments to support that proposition, none of which will withstand analysis.

First, the majority assert that the insuring clause and the exclusions serve two different functions: the former defines those persons who may claim protection with respect to accidents to which the policy applies; the latter provides that the policy does not apply unless the aircraft is piloted by a qualified pilot as defined in the declarations. The problem with the majority's argument is that the declarations do not define the qualifications of pilots; the declarations simply name the Thelens and state their experience which, in the case of Mrs. Thelen, amounts to only 20 hours flying time with "0" hours experience in this make and model of plane. Thus the exclusion, as interpreted by the majority, denies coverage to a permissive user regardless of his qualifications and experience, but extends coverage to the Thelens even though Mrs. Thelen is plainly an inexperienced pilot. The exclusion, in other words, does not distinguish between qualified and unqualified pilots; it distinguishes between the named insured and permissive users. I conclude that the exclusion does not serve the function of protecting the insurer against the risk of accidents caused by unqualified pilots, but is simply a circuitous way of denying protection to permissive users.[4]

I therefore take issue with the majority's assertion that the insuring language and the exclusion serve different functions. In the instant policy they serve the same function: to define those pilots who may claim protection under the policy. The insuring clause expressly includes permissive users; the exclusion impliedly excludes permissive users; the conflict must be resolved in favor of coverage.

The majority next assert that even if the exclusionary provisions eliminate the coverage of permissive users which the insuring provisions purport to grant, no ambiguity exists because the insuring clause is expressly "subject to the exclusions. . . ." The majority's argument

---

[4]In *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45 [109 Cal.Rptr. 698, 513 P.2d 922], and preceding cases cited in *Metz*, we discussed the question whether exclusions in motor vehicle insurance, although phrased in terms of the type of vehicle covered, nevertheless violated statutory provisions requiring coverage of permissive users. We noted that obviously "a policy which excluded automobiles 'when operated by a permissive user' would be clearly seen as an exclusion of persons, not vehicles and [therefore] void." (10 Cal.3d at p. 52.) I suggest by analogy that an exclusion in an aircraft policy which bars coverage unless the airplane is operated by the named insured is an exclusion of persons, not airplanes, and consequently inconsistent with provisions extending coverage to persons other than the named insureds.

overlooks a crucial distinction between an exclusion which merely limits or qualifies coverage, and one which abrogates coverage. Because it is subject to the exclusions, the insuring clause in the present policy does not guarantee that permissive users are covered under all circumstances, but it does communicate the message that under some circumstances the policy protects the permissive user.[5] As interpreted by the majority, however, the exclusions do not merely qualify the insuring language, but contradict the insuring language. Thus the majority's interpretation renders the permissive user language of the insuring clause superfluous and meaningless.

Reasoning that the insurer would not insert superfluous language implying a coverage it did not intend to provide, the reasonable insured would conclude that the policy must provide some coverage for permissive users.[6] An interpretation of the exclusions to deny all coverage of permissive users thus frustrates the insured's reasonable expectation.

---

[5]The majority do not attempt to determine whether there are any conceivable circumstances in which the policy's permissive user coverage might be effective. Such coverage does not protect the two Thelens, for they are covered as named insured and spouse. Nor may one read the policy as providing coverage of permissive users when the permissive user is an employee of a fixed-base operator, for the policy elsewhere excludes employees of airports or aircraft repair services from its definition of insureds.

In an attempt to avoid the conclusion that the policy removes with one clause what it apparently grants with another, plaintiff in its brief to this court conjures up a situation in which a permissive user hires a pilot employed by a fixed-base operator to fly the plane. Perhaps apprehensive lest such a situation be the only one in which the permissive user coverage actually be effective, plaintiff at oral argument suggested that the cause provided coverage for *Mrs. Thelen*, who was not listed as a named insured. Yet the very words of the policy refute this suggestion, for the definition of "Named Insured" includes "the spouse of the Named Insured if a resident of the same household." Thus we face a situation in which the insurer itself, while insisting that the clause in question is unambiguous, offers conflicting interpretations of it. In such a situation we have noted that the insurer's "suggestion . . . is simply a confession that the meaning of the exclusion may differ in other undefined situations: an admission of its ambiguity." (*State Farm Mut. Aut. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 203, fn. 7 [110 Cal.Rptr. 1, 514 P.2d 953].)

In any event, whether the exclusions deny coverage to permissive users in all conceivable cases, or limit coverage to the peculiar and rare case in which the permissive user hires the employee of a fixed-base operator to fly the plane, in practical effect the exclusion nullifies the permissive user coverage of the insuring clause.

[6]The majority state that it is self-evident that the Thelens could not have reasonably expected National to afford coverage without regard to the identity and qualifications of those persons entrusted with flying the aircraft. The Thelens knew that National had agreed to provide coverage when the insured aircraft was piloted by Mrs. Thelen even though she had only 20 flying hours and lacked any experience with the make and model of aircraft in question. The Thelens thus could reasonably expect that National would

The majority also rely on the maxim that "when a general and particular provision are inconsistent, the latter is paramount."[7] (Code Civ. Proc., § 1859; see Civ. Code, § 3534.) That rule of construction, however, comes into play only if the provisions of the contract are inconsistent (*Scudder* v. *Perce* (1911) 159 Cal. 429, 433 [114 P. 571]; *Wilder* v. *Wilder* (1955) 138 Cal.App.2d 152, 158 [291 P.2d 79]) and the contract, consequently, ambiguous. By invoking this maxim of construction, the majority "must necessarily thereby recognize the ambiguity of the contract; [but] in that event other legal techniques . . . including the rule that they should be interpreted against the draftsman, also come into play." (*Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 871.)

Thus the majority's argument poses a conflict between the maxim that special provisions prevail over general provisions, which here might resolve the ambiguity in favor of the insurer, and the rule that ambiguities in insurance contracts are resolved in favor of coverage. In the event of such a conflict, I submit that the principle requiring construction in favor of coverage should prevail.

We so resolved a similar conflict in *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862. There the insurer argued that an ambiguity should be resolved against coverage by applying the maxim *"expressio unius est exclusio alterius."* We rejected that argument, and held that maxims of construction cannot "serve to defeat the basic rule that the insurance contract should be interpreted against the draftsman." (P. 871.) Our opinion explains that "[t]he rule of resolving ambiguities against the insurer does not serve as a mere tie-breaker; it rests upon fundamental considerations of policy. In view of the somewhat fictional nature of intent in standardized contracts, the considerations which support the rule that ambiguities in the policy are to be interpreted against the insurer are more compelling than those which prompt the application of the mechanical *expressio unius* maxim." (*Ibid.*) Following the reasoning of *Steven,* I maintain that the considerations which support the resolution of ambiguities against the insurer are more compelling than those which support the maxim that particular provisions prevail over general provisions.

---

not withdraw coverage because the plane was piloted by Pavitt, a permissive user with more experience and better qualifications than either Mr. or Mrs. Thelen.

[7]The majority's assumption that the pilot qualification provision is "particular" and the insuring language "general" in character is open to question. The insuring language refers specifically to permissive users; the pilot qualification provision makes no mention of that subject; thus arguably the insuring language is the more "particular" of the two provisions.

As we have often declared, it is the duty of the insurer, if it wishes to limit its liability, to do so in a manner which is conspicuous, plain, and clear to the lay purchaser who relies on the policy. (See *Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 878 [103 Cal.Rptr. 865, 500 P.2d 889]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 273.) The insurer should not be permitted to evade that duty by drafting an ambiguous policy, and then invoking mechanical rules of construction unfamiliar to laymen to resolve ambiguities against the insured.

In conclusion I note that this case stems from the unreadability (often compounded by illegibility) of insurance policies, a circumstance which has given rise to considerable unnecessary litigation before the courts of this state. We have repeatedly "inveighed against the careless draftsmanship of documents of insurance and have decried the evil social consequences that flow from lack of clarity. [Citations omitted.] We have emphasized that the uncertain clause leaves in its murky wake not only the disillusioned insured and the protesting insurer but also the anguished court." (*Bareno* v. *Employers Life Ins. Co., supra,* 7 Cal.3d 875, 878.) The policy before us demonstrates simultaneously both the evil and at least a partial cure, for the relative clarity with which it excludes passengers from coverage casts into sharp contrast the obscure and tortuous reading by which the insurer claims to have excluded the permissive user in the instant case.

Since the provisions which purport to exclude coverage for the permissive user in the case at bar are both inconspicuous and ambiguous, the majority's interpretation, which effectively nullifies the protection extended the permissive user by the insuring language of the policy, must fail. The majority's construction of the policy defeats the reasonable expectation of the insured and therefore violates the rule that the courts, faced with an ambiguous insurance policy, will interpret it so as to "effectuat[e] the reasonable expectations of the ordinary applicant." (*Smith* v. *Westland Life Ins. Co.* (1975) 15 Cal.3d 111, 122 [123 Cal.Rptr. 649, 539 P.2d 433]; *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 911 [109 Cal.Rptr. 473, 513 P.2d 353]; *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 868-869.)

Mosk, J., concurred.

Appellants' petition for a rehearing was denied July 28, 1976. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.