ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Plaintiff-Appellee,

v.

Julian S. H. WEINER, Defendant-Appellant.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Plaintiff-Appellee,

v.

Marvin A. LICHTIG, Defendant-Appellant.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Plaintiff-Appellee,

v.

Solomon BLOCK, Defendant-Appellant.

Nos. 77–1399, 77–1493 and 77–1554.

United States Court of Appeals, Ninth Circuit.

Oct. 15, 1979.

Gerry L. Ensley, Abeles & Markowitz, Beverly Hills, Cal.

Barry L. Adamson, Levinson, Buccino, & Uffelman, Portland, Or., for defendants-appellants.

Samuel A. Keesal, Jr., Long Beach, Cal., Douglas L. Hemer and Thomas P. Kane-Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for plaintiff-appellee.

Before TRASK and TANG, Circuit Judges and McNICHOLS,* District Judge.

TANG, Circuit Judge:

The defendants Julian Weiner, Marvin Lichtig, and Solomon Block were accountants who were convicted for their participation in the securities fraud involving Equity Funding Corporation of America. As a result, St. Paul Fire and Marine Insurance Company ("St. Paul") sued the defendants, praying for a declaration that, under the

* The Honorable Ray McNichols, Chief United States District Judge for the District of Idaho, sitting by designation.

terms of the defendants' professional liability insurance policy, the convictions relieved St. Paul of any further duty to provide legal defense in related civil actions. The district court granted St. Paul's motion for a summary judgment, and the defendants appeal. We reverse.

Weiner, Lichtig, and Block were members of the accounting firm of Wolfson, Weiner, Ratoff and Lapin ("the Wolfson firm"). The Wolfson firm was the independent public accountant for Equity Funding. Weiner was a partner in the firm and in charge of the audits of Equity Funding from 1961 to 1973. Lichtig was a junior partner and supervisor of the field audits of Equity Funding. In May 1969 he left to become an executive with Equity Funding. Block was an employee of the firm and replaced Lichtig as supervisor of field audits when Lichtig left.

During the course of the defendants' employment, the accounting firm maintained a professional liability insurance policy with St. Paul. The policy provided generally that St. Paul would pay damages in the event that the insured became legally obligated on account of professional services rendered. It was first issued on June 15, 1968 and was renewed during the subsequent three years. The entire policy period is from June 15, 1968 to June 15, 1971. The policy provides a total coverage of $1,000,000 per year and includes as insured each partner and employee of the firm.

On March 27, 1973 the New York Stock Exchange ceased trading Equity Funding stock following the commencement of an investigation by the Securities and Exchange Commission (SEC) of the fraudulent acts committed by officers and directors of Equity Funding. Shortly thereafter, numerous civil suits were filed in both federal court and California courts against those connected with the Equity Funding schemes. The civil suits in federal court were eventually consolidated into one action labeled, for convenience, MDL Docket No. 142 and subsequently settled. All of the actions named both the Wolfson firm and the individual partners as defendants.

Upon being named a defendant, the Wolfson firm tendered to St. Paul the defense of the actions. St. Paul, with a reservation of rights, agreed to contribute to the defense of the Wolfson firm and also to the defense of the individual defendants.

On November 1, 1973 a criminal indictment was returned against Weiner, Lichtig and Block charging them with violations of federal securities laws. In May 1975, after a lengthy jury trial, Weiner was convicted of ten counts, Lichtig of thirteen counts, and Block of seven counts. The convictions were affirmed by this court in *United States v. Weiner*, 578 F.2d 757 (9th Cir. 1978), and the Supreme Court denied certiorari. 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

Following the defendants' convictions in May, 1975, St. Paul brought the present declaratory relief action for a judgment that the criminal convictions of Weiner, Lichtig, and Block relieved St. Paul of any pending civil actions because of a clause in the insurance policy that excludes from coverage the liability of an employee for fraud or dishonesty. Alternatively, it sought a declaration that it was not required to provide a separate defense for each defendant, but could discharge its duty by defending the Wolfson firm.

After St. Paul moved for summary judgment, the district court granted the motion on three independent grounds: (1) under the facts as established conclusively by the defendants' criminal convictions, the fraud exclusion of the St. Paul policies operates to exclude from policy coverage all claims against the defendants; (2) the same criminal convictions bring into effect California Insurance Code § 533 and California Civil Code § 1668, which bar insurance indemnification for losses incurred by willful acts of the insured, so that all claims against appellants are barred by law from coverage under the St. Paul policies; (3) even if the duty to defend continues, it is satisfied by St. Paul's defense of the Wolfson firm, rather than the separate defense of the individual defendants.

Primarily because of the district court's undue reliance on the preclusive effect of the defendants' convictions, we find it necessary to reverse and remand for further proceedings.

## I

### Mootness

■ Counsel for the defendants failed to appear for oral argument. Mr. DeSantis, counsel for Lichtig, alleged that he received no notice of the argument. Mr. Markowitz, representing Weiner and Block, was at the courthouse, but left without explanation prior to the call of the case.[1] The attorney for St. Paul informed the court at argument that St. Paul had settled its claim with the defendants. Because the defendants' attorneys were not present to explain, we requested further briefing on the issue of mootness.

According to the affidavit submitted by St. Paul, after the settlement of the civil suits, the defendants entered settlement agreements with their other insurance carriers, releasing them from further liability for their defense. However, those settlement agreements apparently fall short of the amount defendants claim they still owe to their counsel for defense of the civil actions. Weiner and Block apparently still claim $7,708.82 from St. Paul, or less than 0.5% of the more than $1.85 million paid so far to counsel for Weiner and Block for services rendered in the civil actions; the maximum amount that Lichtig may be claiming is $21,775.96, or 2.2% of the more than $ 1 million paid so far to counsel for Lichtig. Although we agree with St. Paul that the amounts unpaid are insignificant in light of the substantial fees already paid to the defendants' counsel, the fact that some claims remain outstanding is sufficient to make this a "live" controversy.

## II

### Summary Judgment

We note preliminarily that in examining a motion for summary judgment, the district court must determine whether any material factual issues exist which can be resolved only through trial. *United States v. Allen,* 578 F.2d 236, 237 (9th Cir. 1978). If such issues of fact exist summary judgment cannot be granted. *Securities and Exchange Commission v. Koracorp Industries, Inc.,* 575 F.2d 692 (9th Cir.), *cert. denied* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

■ Because this action was brought in federal district court under diversity jurisdiction, the substantive law of California, the forum state, applies. *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), is the leading California case on the insurer's duty to defend. In *Gray,* the California Supreme Court set out a number of rules pertinent to the construction of insurance policies. As we shall see, these rules are determinative of the issues raised in the case.

### A. Ambiguity

Relying on the exclusionary clause of the insurance policy, St. Paul argues that it was under no duty to defend the defendants because the fraudulent conduct for which they were convicted was excluded from coverage. Yet the policy itself is ambiguous on whether acts of fraud are excluded from the policy. The insuring section of the policy, entitled coverage A, states:

> This Insuring Agreement includes as a part of the professional services of an accountant such legal liability arising from any claim or claims which may be brought about or contributed to by reason of: dishonesty, misrepresentation or fraud; . . . .

The very next paragraph sets out the exclusionary clause of the policy. It states:

### COVERAGE A DOES NOT APPLY:

1. To the liability of (a) any employee of the named Insured for his dishonesty, misrepresentation or fraud, or (b) any other Insured for his affirmative dishon-

---

1. Mr. Markowitz never provided the court with a satisfactory explanation for his failure to appear at oral argument. We think he was remiss for not doing so.

esty or actual intent to deceive or defraud . . ..

Thus, the district court's assumption that the policy does not cover acts of "dishonesty, misrepresentation or fraud" may be incorrect because the policy appears to include and exclude the identical acts.

 In *Gray,* the California Supreme Court held that the insurer bore the obligation to defend where the policy reasonably leads the insured to expect a defense. *Gray,* 65 Cal.2d at 275, 54 Cal.Rptr. at 112, 419 P.2d at 176. Where the insurer attempts to avoid the duty by an unclear exclusionary clause, the insured may reasonably expect such a defense. *Id.* at 268, 54 Cal.Rptr. at 107, 419 P.2d at 171. Any uncertainties as to the application of the clause are resolved in favor of the insured. *Id.* at 268–72, 54 Cal.Rptr. at 107–09, 419 P.2d at 171–73. Had the terms in the exclusionary clause been more specific than those in the general clause, it might have been possible for the district court to hold that the more specific terms governed. *See National Insurance Underwriters v. Carter,* 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362 (1976). Here, however, the terms in both the general clause and the exclusionary clause were equally specific. This ambiguity alone was sufficient to preclude the district court from granting summary judgment on the issue whether, under *Gray,* the policy gave the defendants a reasonable expectation of the insurer's duty to defend.

B. Collateral Estoppel

Applying the doctrine of collateral estoppel, the district court found that the defendants' criminal convictions demonstrated their participation in the common scheme during the period that they were covered by St. Paul's policy, and thus, there was no possibility of liability attaching to the defendants that would be within the coverage of the policy. There are several reasons why the district court erred in relying on the doctrine of collateral estoppel.

 The relevant substantive law is the California law pertaining to collateral estoppel. *See Haung Tang v. Aetna Life*

*Insurance Co.,* 523 F.2d 811 (9th Cir. 1975); *Priest v. American Smelting and Refining Co.,* 409 F.2d 1229 (9th Cir. 1969) (applying the law of collateral estoppel of the forum state). Under the doctrine of collateral estoppel an issue litigated at a former trial precludes its relitigation at a subsequent trial when:

(1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." *Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 874, 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978) (emphasis in original).

When these requirements are met, the doctrine of collateral estoppel may apply even though the preceding action was a criminal action, thereby precluding a defendant from relitigating an issue that has necessarily been determined by the prior criminal conviction. *Clemmer v. Hartford Insurance, supra,* 22 Cal.3d at 874, 151 Cal.Rptr. at 289, 587 P.2d at 1102; *Teitelbaum Furs Inc. v. Dominion Insurance Co.,* 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (1962).

 Although the second and third requirements for the application of the doctrine were fulfilled in the present case, the initial requirement that the issues actually resolved in the past action be identical to those in the present action was not met. The present action differs from the criminal conviction in two important respects. It differs as to the dates, *i. e.,* the differences in time frames between the dates for which the defendants were convicted and the relevant policy period; and as to causes of action, i. e., the difference between the defendants' convictions for willful acts and the civil claims asserted against them based on nonwillful acts.

*Dates*

The St. Paul policy covers the period from June 15, 1968 to June 15, 1971. The defendants' convictions also cover specific periods. The earliest conviction for Weiner

and Lichtig is under Count 75, for willfully making untrue statements of material fact in a registration statement filed with the SEC on April 22, 1969. *Weiner*, 578 F.2d at 778. No conviction exists for any acts committed by Weiner and Lichtig before that date. Block's earliest conviction is under Count 10, for a fraudulent statement submitted on October 20, 1971.

The convictions, therefore, cannot be determinative of the acts committed by appellants before those conviction dates. Weiner and Lichtig's convictions cannot be determinative of their acts between June 15, 1968 and April 22, 1969. Block's criminal conviction for acts after October 20, 1971 cannot be determinative of his acts from June 15, 1968 until that date. Thus, these later criminal convictions cannot factually determine whether appellants earlier engaged in fraudulent acts so as to come within the policy exclusion.[2]

St. Paul argues that because Counts 1 and 2, which described the history of the scheme, were incorporated into the counts on which the defendants were found guilty, the jury necessarily determined that the defendants were parties to the scheme since its inception in 1965.[3] Such an inference cannot be drawn. As we noted in the defendants' prior appeal, the district court strictly admonished the jury to consider only the counts submitted to it and not the counts that had been dismissed. *Weiner*, 578 F.2d at 775 n. 17.

**2.** In fact, the court in *Weiner* suggested that the defendants were not part of the fraud before the dates of their convictions:

> Block's suspicions were aroused in 1969. The jury chose not to convict him for his activities then. Their finding that by 1971, during the audit for 1970, Block had the requisite willfulness and knowledge is supported by the record. . . .

> More accurate is the following comment of the trial judge made during the proceedings relating to defendant's motion for new trial: The evidence, I think, does not show that the defendants were aware of the fraud in its early stages. I think they were the victims of the fraud for some period of time.

> \* \* \* \* \* \*

*Causes of Action*

The civil actions brought against the defendants stem from their role as auditors of Equity Funding. Although many of the claims against them are based on fraud, many are not. St. Paul acknowledges in its brief that not all of the claims are fraud-related. As an alternative holding in *Gray*, the California Supreme Court set forth the rule that an insurer has a duty to defend under a liability policy if there is any possibility of coverage, even though the claims against the insured might also result in a judgment falling within the policy's exclusionary clause. *Gray*, 65 Cal.2d at 275, 54 Cal.Rptr. at 112, 419 P.2d at 176. Because the claims against the defendants here included allegations based on negligence and contract theories, there was a possibility that St. Paul had a duty to defend the defendants even though the claims also included fraud allegations. The defendants' criminal convictions did not resolve these nonfraud allegations. Nor did the subsequent settlement of the claims in federal court change St. Paul's duty. No finding was made that the settlement was based only on the fraudulent claims, and presumably the settlement includes all of the claims. Thus, St. Paul's duty to defend continues after the settlement.

In short, collateral estoppel was improperly applied in this case. Despite the defendants' criminal convictions, the possibility remained that St. Paul had a duty to defend the civil actions brought against the defendants.

> Even though the evidence is not altogether direct, it is largely circumstantial, it is overwhelming to the point where I cannot escape the conclusion that the defendants must have known and must have come to a point where they knew of the fraud, and that they thereafter did acts in furtherance of the fraud. *Weiner*, 578 F.2d at 783, 784.

**3.** Count 1 charged Lichtig, Weiner, Block, and nineteen others with conspiracy to commit securities fraud by mail, in violation of 18 U.S.C. § 371, over a period of time between January 1965 and April 1973. Count 2 charged all twenty-two defendants with securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x. Count 2 incorporated by reference certain informational paragraphs of Count 1.

## C. California Statutory Authority

■ As an alternative basis for holding that St. Paul's duty ceased upon appellants' convictions for fraud, the district court relied upon California Insurance Code § 533 and California Civil Code § 1668. California Insurance Code § 533 provides:

An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agent or others.

California Civil Code § 1668 provides, in relevant part:

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

St. Paul argued before the district court that these statutes excuse the insurer from defending an action that seeks damages for intentional wrongs.

The California Supreme Court disposed of a similar contention in *Gray*. There the court held that these statutes cannot be used to relieve an insurance company from its duty to defend under the policy. The court stated:

[T]he statutes forbid only contracts which indemnify for *"loss"* or *"responsibility"* resulting from wilful wrongdoing. Here we deal with a contract which provides for *legal defense* against an action charging such conduct; the contract does not call for indemnification of the insured if the third party plaintiff prevails.

65 Cal.2d at 277–78, 54 Cal.Rptr. at 113, 419 P.2d at 177 (emphasis in original). The reasoning in *Gray* is equally applicable here. This was a contract that provided for legal defense against actions charging willful conduct.

## D. Separate Defenses

■ Under California law, an insurer must provide individual counsel for the parties where there is a potential conflict of interest. *O'Morrow v. Borad*, 27 Cal.2d 794, 167 P.2d 483 (1946); *Executive Aviation Inc. v. National Insurance Underwriters*, 16 Cal.App.3d 799, 94 Cal.Rptr. 347 (1971). Presumably finding no conflicts of interest, the district court held, on an alternative ground, that St. Paul had no further duty to provide separate defenses to each of the individual defendants. In defense of this holding, St. Paul once again relies on the defendants' convictions. It argues that the convictions make it impossible for the defendants to absolve themselves from liability by implicating each other.

■ To the extent that St. Paul relies on the collateral estoppel effect of the convictions, its reliance is deficient for the reasons previously discussed. There are other reasons that made the district court's disposition of this issue on a motion for summary judgment incorrect. Other than the existence of the convictions, there is no evidence appearing in the record that demonstrates the absence of a conflict of interest among the defendants. The defendants do show facts that suggest potential conflicts. Lawsuits against the firm and individual members of the firm are still pending, as well as claims by the individual members against each other. Even if there was no actual conflict among the defendants, it is questionable whether St. Paul can discharge its duty to defend the individual partners by representing the partnership alone, because the defendants' interests may conflict with those of the other members of the firm. Furthermore, the partnership itself is now defunct, raising questions of whether it can be represented. In short, although it is possible that the potential conflicts among the individual defendants are illusory, the district court's disposition of this factual issue on a motion for summary judgment was premature.

We thus find it necessary to remand this suit for the district court to determine further St. Paul's continuing obligation to insure the defendant under the policy. We do so with some reluctance. From the facts presented in St. Paul's brief on mootness, it appears that, with the defendants' settlement of their claims with the other insur-

ance carriers, the amount of money that St. Paul may still owe the defendants' counsel is relatively small. It also appears improbable that the defendants will incur more attorney fees in future Equity Funding-related civil actions. The case thus seems to be one particularly appropriate for settlement and the parties are encouraged to reach some mutually satisfactory discharge of further obligations. If settlement is not forthcoming, we suggest that the district court on remand attempt to determine the extent to which St. Paul can be obligated to defend the defendants in the future. From the record before us, it appears that St. Paul can be obligated to pay no more than the amount left unsatisfied by the defendants' settlement with the other insurance carriers. An attempt should be made to determine this upper limit so that St. Paul's future liability not be open-ended.

Reversed and remanded.