*14
 
 Kinkade, J.
 

 This is an action upon a life insurance policy. The policy was issued October 15, 1923, by plaintiff in error upon the life of James Ray, husband of the defendant in error, Lillie Ray. The policy was for $335. The premium was 25 cents per week. The policy would have matured by the death of the insured, which occurred April 29, 1924, had the policy been then in force. Lillie Ray was named as beneficiary in the policy. Due proofs of death were made. The insurance company refused payment, claiming the policy had lapsed on March 3, 1924, by nonpayment of premiums due for four weeks or more prior to that time. Lillie Ray began an action in the court of common pleas to recover upon the policy. The trial judge directed the jury to return a verdict in favor of the insurance company. This was done, and judgment entered accordingly. The Court of Appeals reversed the court of common pleas for error in overruling the motion of plaintiff for a new trial and for directing a verdict for the defendant. The insurance company prosecutes error to this court.
 

 Lillie Ray averred full performance of the terms of the insurance contract—the policy—by her husband and herself, adding that, if there had been any default in payment of premiums, the insurance company had waived the default, or, if it had not so waived the default, then the policy had in fact been fully revived and was in full force at the death of the insured.
 

 The insurance company alleged default in the payment of premiums, and thereby the complete lapse of the policy on March 3, 1924, denied that the nonpayment of premiums had been waived,
 
 *15
 
 denied that there had been any revivor of the policy, denied that the policy was in effect at any time after March 3, 1924, and averred that Lillie Ray had fraudulently connived and conspired with a man other than her husband to impersonate her husband and sign an application for the reinstatement or revivor of the policy on April 14, 1924, under such circumstances as to conceal, and which did conceal, the fact from the company that her husband was then in a hospital in Chicago suffering from a serious illness, tuberculosis, which caused his death on April 29, 1924. The reply denied the averments of the answer. •
 

 It is important to note some of the terms of this insurance contract. We quote from the policy as follows:
 

 “In consideration of the payment of the premium stated in the schedule below, on or before each Monday, the National Life & Accident Insurance Company hereby agrees, subject to the conditions below and on the reverse side hereof, all of which are hereby made a part of this contract and contracted by the insured and every person entitled to claim hereunder to be a part hereof, to pay to the insured as an endowment, on the anniversary of this policy next after the insured shall have passed the age of sixty-nine years, * * * and said company further agrees, subject to the conditions aforesaid, if the insured shall die prior to the date of maturity of the endowment, to pay, upon receipt of proofs of the death of the insured * * * the amount stipulated in said schedule,, to the beneficiary named herein * * *.
 

 “No obligation is assumed by the company prior
 
 *16
 
 to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive or not be in sound health on the date hereof, any amount paid to the company as premiums hereon shall be returned.
 

 “This policy contains the entire agreement between the company and the insured and the holder and owner hereof. Its terms cannot be changed or its conditions varied, except by a written agreement, signed by the president or secretary of the company. No other agent or employee shall have the power to make or alter contracts, waive forfeitures, or receive premiums on policies in arrears more than four weeks, or to receipt for the same, and all such arrears given to an agent or employee shall be at the risk of those who pay them and shall not be credited upon the policy whether receipted for or not * *
 
 *.
 

 “If any premium shall not be paid when due, this policy shall be void, except as herein otherwise provided, and it is agreed that this provision shall not be considered in any respect waived by any indulgence granted by the company in the acceptance of overdue premiums upon this or any other policy *
 
 * *.
 

 ■
 
 ‘ ‘ The failure of the collector to call for the premium on this policy will not be an excuse for nonpayment, as the insured will then be required to pay the premium at the branch office of the company, or remit the same direct to the home office.
 

 “If this policy is or shall become void, all premiums paid shall be forfeited to the company, except as provided under ‘Privileges and Concessions to Policy Holders’ * * *.
 

 
 *17
 
 “The privileges and concessions to policy holders, schedule on reverse side hereof, and any indorsement either printed or written as made by the company, on this or the reverse side hereof, are a part of this contract as fully as if recited over the signatures hereto affixed * * *.
 

 “Privileges and Concessions to Policy Holder.
 

 “Option to surrender within two weeks. If the terms of this policy are not satisfactory or if its conditions are not accepted and agreed to, the policy may be surrendered for cancellation at the office of the manager of the district, through which this policy is delivered within two weeks from the date hereof; and if so surrendered within said period, the premiums paid hereon will be returned * # *
 

 “Grace Period.
 
 A grace of four weeks shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the days of grace, the overdue premiums shall be deducted from, the amount payable hereunder, but neither this concession nor the acceptance of any overdue premium shall create an obligation on the part of the company to receive premiums which are in arrears over four weeks * * *.
 

 “Revival.
 
 Should this policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured.”
 

 The insurance company moved the court to require the defendant in error to elect between al
 
 *18
 
 leged waiver of nonpayment of premiums and alleged revivor of the policy. In this connection counsel for the insurance company said (page 37 of the record), “It is the position of the defendant that the policy lapsed about March 3, 1924, and it was not revived,” to which defendant in error replied, “Upon that position being taken by the defendant, the plaintiff elects to proceed upon the claim that the policy was revived,” from which it clearly appears the issue of waiver passed entirely out of this case, as well it might, because there is no evidence in the record to support the claim of waiver.
 

 The only other question in dispute is the question of revivor of the policy, after it had completely lapsed on March 3, 1924. The defendant in error claims that on April 12, 1924, she paid to the agent and collector of the insurance company, at her home, $3 to revive the policy, and that that fact of payment was noted by the agent on a card that she had. She does not claim to have done anything other than this to revive the policy. The agent of the company admits that at that time and place he did receive $3 from the defendant in error, and that she then said she was paying the amount for the purpose of reviving the policy. He denies most emphatically that he said or did anything to lead the defendant in error to believe that she could revive the policy by this payment alone. On the contrary, he testified that he then told her that a revivor could only be based on a written application signed by the insured and approved by the insurance company at its home office in Nashville, Tenn., and that the policy could not be considered
 
 *19
 
 as again in force until the approving certificate was returned by the company and attached to the policy. The agent also testified that the defendant in error then said her husband was not at home at that time, but would be at home on the following Monday, April 14,1924, and that, if the agent would call again at that time, the written application for revivor would be duly signed, and that he did call on Monday, April 14th, and that the fraudulent impersonation of the husband was then made by another man who was then introduced to the agent by the defendant in error as her husband, and a written application for revivor of the policy was then executed and delivered to the agent. The written application taken in this case, which was then signed by the name of the insured by his mark, was introduced in evidence and is a part of the record. The medical certificate appearing as a part thereof is not filled out, but the agent’s statement that the party appeared to be in good health, and that the agent recommended the acceptance of the application, does appear therein, and the agent testified that he asked the impersonator if he was the husband of the defendant in error, and he said that he was, and that he also asked him if he was in good health, and he said that he was. All this testimony concerning the written application for revivor was flatly denied by the defendant in error on the witness stand. It is difficult to escape the conclusion that one or the other of these two witnesses willfully and knowingly testified falsely on this subject. The evidence being in conflict, we give it no consideration in disposing of this case.
 

 An agreed statement of facts covering part of
 
 *20
 
 the facts was entered into during the trial, from which we quote as follows:
 

 “It is agreed by-and between the plaintiff and defendant that the following facts shall be admitted as proven and undisputed, subject to the right of either party to introduce such further and additional evidence as may be relevant to the issues herein and not inconsistent with the following, and subject to the right of objection on the ground of competency:
 

 “(1) The said James Ray, mentioned in plaintiff’s petition as the insured, was admitted to Cook County Hospital, Chicago, 111., on March 12, 1924, suffering from pulmonary and laryngeal tuberculosis. The said James Ray remained at said Cook County Hospital as a patient therein continuously from the date of March 12, 1924, until April 29, 1924, on which latter date he died. The primary cause of the death of said Ray was far advanced fibro ulcero pulmonary tuberculosis, and the contributing cause of said Ray’s death was laryngeal tuberculosis, from which diseases he suffered continuously from the date of his entrance to Cook County Hospital up to the time of his death.”
 

 The sole question in this case is whether the payment alone on April 12, 1924, of $3 to the agent, revived this policy. To hold that it did is to wholly ignore the plain provisions of the policy. Evidence of the then good health of the insured was as essential as was the payment of the premiums in arrear, and also the approval thereof by the officers of the company designated in the policy. When this payment was made, the insured was in Cook County Hospital in Chicago, and had been
 
 *21
 
 there continuously from March 12, 1924, suffering from a far-advanced case of tuberculosis, from which he died on April 29, 1924. There is no evidence in the record that the insurance company, or any one connected with the company in any way, had any knowledge of his then condition or of the fact that he was in a hospital. The first information about his condition or whereabouts was that given to the company after his death, that he had died in the hospital on April 29, 1924.
 

 Upon learning the real facts of the case, the insurance company offered to return the $3 that had been paid April 12, 1924, by the beneficiary, in an attempt to revive this policy. This offer was declined. The plaintiff’s own testimony in the trial court flatly and completely established that she had no right to recover in this case. £?he paid the amount to the collector and agent of the company, who had no right to receive the money for the revivor of the lapsed policy until such revivor had been approved by the officials of the company, as plainly stated in the policy. According to her own story, told on the witness stand, she did not make any statement concerning the whereabouts or health of her husband at the time of the payment, because she was not then asked to do so. This is not sufficient. The renewal of a lapsed policy is the equivalent of a new policy. This policy completely lapsed on March 3, 1924, and the terms of the policy are in no sense ambiguous about what is necessary to effect a renewal of the policy and what representatives of the company are and what are not authorized to represent the company in that respect.
 

 
 *22
 
 Insurance policies, like other written contracts, mean what they say and all they say. They are written for the protection of both parties thereto, and all others interested in the policies. If such contracts are not to he enforced as written, they might as well not be written at all.
 

 The common pleas court was amply justified by the evidence offered by plaintiff alone in directing the jury to return a verdict for the defendant. The judgment of the Court of Appeals will be reversed and that of the common pleas affirmed.
 

 Judgment reversed and judgment of common pleas affirmed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.