DRUMM, APPELLEE, *v.* BLUE CROSS OF NORTHEAST OHIO ET AL., APPELLANTS.

[Cite as Drumm v. Blue Cross (1974), 40 Ohio App. 2d 421.]

(No. 32437—Decided January 17, 1974.)

*Messrs. Dunn & Kraig,* for appellee.

*Messrs. Thompson, Hine & Flory, Mr. Michael M. Hughes* of counsel, for appellant Blue Cross of Northeast Ohio.

*Messrs. Schmidt, Effron, Josselson & Weber,* for appellant Health Care Mutual Association.

JACKSON, J. This is an appeal from a judgment of the Common Pleas Court of Cuyahoga County, in favor of plaintiff for $12,500. Suit was brought by appellee as plain-

422

tiff below based on a contract between the United States Civil Service Commission and the Blue Cross Association and National Association of Blue Shield Plans. The Blue Cross Association and National Association of Blue Shield Plans executed the contract which provides certain benefits for Federal employees enrolled in the Plan. Defendant Health Care Mutual Association is the underwriter of the "Supplemental Benefits" portion of this plan. Plaintiff was enrolled in the Plan and his daughter, Patricia, was covered by its provisions when the activities giving rise to this suit arose.

Appellee, in his complaint, claimed that $36,000 was due him under the "Supplemental Benefits" clause of the policy. This sum represented the expenses which would have resulted if plaintiff's daughter, Patricia, had spent three years in Devereux Foundation of Devon, Pennsylvania, a nonprofit institution suited to the treatment of nervous and mental disorders in children. The record discloses that Patricia actually spent twelve months at this institution.

Appellants, Blue Cross of Northeast Ohio and Health Care Mutual Association, both filed answers denying liability under any contract or insurance policy. Blue Cross of Northeast Ohio additionally denied that it had any contract with the plaintiff, and accordingly, prayed that it be dismissed. Upon trial before the court, verdict and judgment was entered in favor of appellee against both defendants in the amount of $12,000, the cost of one year's enrollment at Devereux Foundation at $1,000 per month. Motion for New Trial was overruled. Defendants' motion for separate findings of fact and conclusions of law was granted. Defendants and plaintiff both filed proposed findings of fact and conclusions of law, but the record fails to disclose that any such findings and conclusions have been journalized by the trial court. Defendant Health Care Mutual Association appeals, assigning six errors:

1. The court erred in ignoring the specific requirement set forth in the brochures that, to obtain benefits, the subscriber must submit itemized bills from the suppliers of

services and in finding that a blanket all-inclusive charge of $1,000.00 per month with no itemization of services constituted an ''itemized bill''.

2. The court erred in finding Devereux to be a hospital as defined in the contract.

3. The court erred in disregarding the contractual limitations on benefits provided and the exclusions.

4. The judgment is excessive.

5. The court erred in admitting the testimony of Dr. Rubin over objection by defendants and in not stricking such testimony on motion of defendants.

6. The judgment is not sustained by the evidence and is contrary to law.

Defendant Blue Cross of Northeast Ohio also appeals, joining in the errors assigned by Health Care Mutual Association and also assigning an additional error which is disposed of below following the discussion of the six mutual assignments of error.

## I.

Assignments of error numbers 1, 2 and 3 all involve the question of whether the trial court correctly interpreted and applied various coverage provisions of appellee's insurance policy. Because the various coverage provisions of this policy are interdependent these assignments will be disposed of together.

The parties have stipulated that Plaintiff's Exhibits D, E and F indicate the benefits available under the insurance policy and the procedure for obtaining these benefits (Tr. 20). These three exhibits are practically identical brochures issued in compliance with Federal law. The brochures set forth, in summary form, the services and benefits available to employees and their family members covered by the Plan.[1]

The Plan offers Basic and Supplemental Benefits. Basic Benefits are not provided for services rendered in non-member hospitals which are primarily a place for the treat-

---

[1] All further references herein to the "Plan" are taken from Plaintiff's Exhibit F, *Service Benefit Plan*, as revised January 1, 1970.

ment of nervous or mental disorders, but Supplemental Benefits are provided for covered services received in such institutions.[2] Devereux is not a "member hospital" under the Plan because it does not have the required agreement with Blue Cross.[3] Therefore, if the charges incurred by plaintiff for the treatment of his daughter's emotional problems at Devereux are covered at all under the Plan, these charges must be covered under the Supplemental Benefits rather than the Basic Benefits portion of the Plan.

Supplemental Benefits cover the ". . . usual, customary and reasonable charges for medically necessary covered services and supplies in or out of a hospital prescribed or ordered by a physician. . . ."[4] Those particular services and supplies which are "covered" are listed in the Plan,[5] as are specific exclusions.[6]

The trial court awarded the plaintiff $12,000, the full charge for Patricia's one-year stay at Devereux, even though Devereux provided Patricia with a full year of college preparatory education for which she received credit in English, History, Biology, Geometry, Spanish and Physical Education. The expense for this education is not listed as a covered service under the Supplemental Benefits portion of the Plan. In fact, educational therapy is specifically excluded from coverage.[7]

Some of the services provided Patricia at Devereux are, arguably, covered by the Plan. A clause of particular importance reads:

*For nervous and mental disorders*—In addition to other services and supplies covered by Basic or Supplemental Benefits, the following are covered under Supplemental Benefits *when performed at the direction and under the supervision of the attending physician*:

• Day-night hospital care

[2] *Plan*, 5.
[3] *Id*. 14.
[4] *Id*. 9.
[5] *Id*. 11.
[6] *Id*. 12.
[7] *Id*.

- Group therapy
- Collateral visits with members of the patient's immediate family
- Services of a member of a "mental health team" (i. e. physician, psychologist, psychiatric nurse, psychiatric social worker).[8]

Patricia was provided with group therapy and the services of a member of a "mental health team" once per week while she stayed at Devereux.

The Plan provides a solution for the problem presented when an institution such as Devereux provides an insured with some services which are covered and some which are not. The section of the Plan titled "How to Obtain Benefits—Claims for Supplemental Benefits" clearly states "Itemized bills are necessary."[9] This section goes on to state: "Itemized bills must show name and address of provider of services, name of patient, date of service, type of service, and charge for each service."[10] No such itemized bill was ever filed by the plaintiff, as Devereux claimed that the $1,000 per month represented an indivisible charge for the "total concept" or "milieu" theory on which Devereux is based. The essential concept of "milieu therapy" is that *everything* that happens to the patient has a considerable psychological impact (Tr. 200). This court passes no judgment upon the validity or effectiveness of "milieu therapy." But, because the Plan clearly covers only certain enumerated services and supplies, an award of the full charge for "milieu therapy" amounts to an impermissible judicial extension of an insurance contract beyond the limits clearly established by the policy. Courts are bound by the unambiguous terms of an insurance contract and cannot enlarge or extend the contract by implication so as to embrace an object distinct from that originally contemplated by the parties. *Motorists Mut. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222, 226; *Olmstead* v. *Lumbermens Mutl.*

---

[8]*Id.* 11. Underlined portions are in bold-faced type in the brochure.
[9]*Id.* 17.
[10]*Id.*

*Ins. Co.* (1970), 22 Ohio St. 2d 212, 216; *National Life and Accident Ins. Co.* v. *Ray* (1927), 117 Ohio St. 13, 22; *Fidelity & Casualty Co. of New York* v. *Harzell Bros. Co.* (1924), 109 Ohio St. 566, 569.

A problem related to the proper interpretation of the Plan is raised by appellants' complaint that they made timely requests for specific findings of fact separate from conclusions of law and that the trial court did not comply as required in Rule 52 of the Ohio Rules of Civil Procedure. However, the trial court did compose a Memorandum of Opinion.[11] Rule 52 of the Civil Rules states, in part: "An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule. . . ." The Memorandum of Opinion will therefore be treated as containing the trial court's findings of fact found separately from conclusions of law.

One specific finding by the trial court was that the plaintiff appellee fulfilled the requirements of the Plan calling for an itemized bill. This conclusion is premised on the finding that the "type of service" is sufficiently itemized by listing "milieu therapy." For the reasons stated above, this conclusion is rejected.

A second specific finding in the trial court's Memorandum of Opinion is that Devereux Foundation, Devon, Pennsylvania, is a "nonmember hospital" as that term is defined in the Plan. Appellants assail this finding in their second assignment of error.

The Plan defines "nonmember hospital" as follows:

*Nonmember hospital* is an institution other than a member hospital which, for compensation from its patients and of an inpatient basis, is engaged primarily in provid-

---

[11]The Memorandum of Opinion is not stamped with the clerk's official notation that it has been filed. However, the Appearance Docket contains the handwritten notation "See Memo of opinion" beneath the August 1, 1972 entry announcing judgment. The briefs of both parties indicate that they have treated the Memorandum of Opinion as journalized, and this court will do likewise.

ing diagnostic and therapeutic facilities for the surgical or medical diagnosis, treatment, and care of injured and sick persons by or under the supervision of a staff of licensed doctors of medicine (M. D.) or licensed doctors of osteopathy (D. O.) and which continuously provides 24-hour-a-day registered graduate nursing service; and which is not, other than incidentally, (1) an extended care facility; a nursing home; a place for rest, the aged, drug addicts, alcoholics; (2) a custodial or domiciliary institution which has as its primary purpose the furnishing of food, shelter, training, or nonmedical personal services; or (3) for Basic Benefits, a place for the treatment of pulmonary tuberculosis or nervous or mental disorders.

College infirmaries are considered as nonmember hospitals. Benefits for the per diem rate charge will be provided for services in U. S. Public Health Service hospitals and Armed Forces hospitals.[12]

The crucial question is whether Devereux, in terms of the services provided Patricia was, other than incidentally, a "domiciliary institution which [had] as its primary purpose the furnishing of food, shelter, training, or nonmedical personal services." The meaning of this clause is clarified by the specific exclusion from coverage of charges incurred for "Speech therapy, occupational therapy, educational therapy, or other forms of nonmedical self-care, or self-help training."[13] These two clauses, read together, clearly reveal that a domiciliary institution which provides educational training is not a hospital under the Plan unless such educational training is merely incidental to the primary purpose of the institution. The record demonstrates that the education offered Patricia at Devereux was not merely incidental to the primary purpose of her stay at the institution. For example: Patricia was placed in an academically oriented dormitory (Tr. 98); she was therefore provided ordinary high school classes on a daily basis (Tr. 99); she attended five, 45-minute long classes a day; she

---

[12] *Plan*, 12.
[13] *Id*.

was graded in her subjects, and passed them all (Tr. 150) ; she was therefore qualified to pass on to the eleventh grade at a regular school (Tr. 151).[14] We consequently conclude that Devereux did not offer hospital services to Patricia Drumm.

The fact that Devereux did not offer hospital services to Patricia does not necessarily mean that appellant is precluded from any benefits under the Plan. Certain Supplemental Benefits are available for services and supplies provided out of a hospital. However, appellee's failure to provide an itemized bill prevents this court from sustaining any portion of the $12,000 judgment.

## II.

In assignment of error No. 4 appellants claim that the trial court's judgment awarding appellee $12,000, the full amount of Devereux's charges, is excessive. We agree. The Plan clearly limits Supplemental Benefits to 80 per cent, under the High Option,[15] of the usual, customary and reasonable charges for covered services and supplies in excess of the deductible.[16] Therefore, even if all of the services provided by Devereux were covered by the Plan, plaintiff's maximum recovery should have been 80 per cent of $12,000 or $9,600.

## III.

For assignment of error No. 5 appellants claim that the trial court erred in admitting the testimony of Dr. Rubin. Dr. Rubin is a clinical psychologist who has worked in the Cleveland, Ohio area since 1957. He testified that the cost of psychotherapy and hospitalization supplied Patricia was $650 per month (Tr. 185). On cross-examination, Dr. Rubin admitted that he had no first hand experience with

---

[14]This is not to say that education is more than an incidental part of the services provided by Devereux to all of its "students." This court recognizes that, in addition to students like Patricia who have superior intellectual capacities and, in spite of their emotional problems, are able to carry a full academic load, Devereux enrolls children with problems which prevent conventional educational training.

[15]Appellee is covered under the High Option (Tr. 50).

[16]*Plan*, 10.

Devereux; that he had never been to Devereux; that he knew nothing of the Devereux cost breakdown in terms of how much of the fee charged was due to psychiatric care and how much was due to other things; that he had never seen Patricia Drumm and knew nothing about her from personal knowledge. Dr. Rubin further testified that he had been familiar with the name "Devereux Foundation" for 20 years; that he acquired this familiarity through courses in child psychology, through advertisements in psychology journals, at psychology conventions where Devereux Schools had information booths, and through literature provided by Devereux.

Because Dr. Rubin was not personally acquainted with the Devereux Schools, or the services rendered Patricia at Devereux, he was incompetent to testify as to the cost of services supplied by Devereux to Patricia, unless his testimony was given in response to a proper hypothetical question based upon other facts in evidence. *Kraner* v. *Coastal Tank Lines, Inc.* (1971), 26 Ohio St. 2d 59; *Burens* v. *Industrial Comm.* (1955), 162 Ohio St. 549. An expert may not base his opinion upon the hearsay statements of others. *Consumano* v. *Pepsi-Cola Bottling Co.* (1967), 9 Ohio App. 2d 105, 113. Dr. Rubin testified that he based his opinion partially on information provided him by counsel, outside of the courtroom (Tr. 181, 182). Consequently, because Dr. Rubin's opinion was not based upon either his personal knowledge or other evidence in the record, his testimony should have been excluded.

This is not a case like *Aetna Life* v. *Hare* (Ala. 1972), 256 So. 2d 904, where a psychiatrist with no personal knowledge of Devereux was permitted to testify as to the *reasonableness* of charges for treatment at this facility. Mr. Kraig, attorney for plaintiff appellee, explained that he offered Dr. Rubin's testimony as a substitute for an itemized bill because Devereux would not "break down" their fee (Tr. 184). Dr. Rubin was admittedly incompetent to testify as to the cost breakdown of Devereux's fees (Tr. 200). Nor can the rule of "Multiple Admissibility" be invoked to save Dr. Rubin's testimony under the theory that

his testimony is admissible as evidence of the reasonableness of Devereux's charges. Dr. Rubin testified as to actual charges, not the reasonableness of charges.

In a related assignment of error, appellant Blue Cross of Northeast Ohio separately asserts that portions of the testimony of David Hunt, Assistant Secretary and Assistant Treasurer of Devereux Foundation were erroneously admitted to the prejudice of the appellants. Specifically, Blue Cross of Northeast Ohio objects to Mr. Hunt's testimony to the effect that the *reasonable* charges for psychiatric consultation in "this community" [presumably the Devon, Pennsylvania area] were about $30 to $35 per session. Appellant claims that this testimony was inadmissible for two reasons: (1) Mr. Hunt was incompetent to give such testimony; (2) the testimony was irrelevant because it pertained to "private practice" rates while Devereux's psychiatrists were on a salary. Mr. Hunt was competent to testify because he was personally aware of some of the rates in the community (Tr. 151). Mr. Hunt's testimony was relevant because, under the Plan, each subscriber is entitled to Supplemental Benefits for the usual, customary and *reasonable* charges for covered services. The trial court committed no error in accepting, for what it was worth, this testimony from Mr. Hunt. In so holding, we do not conclude that Mr. Hunt's testimony in any way meets the Plan's requirements for an itemized bill.

## IV.

In assignment of error No. 6 appellants assert that the judgment is not sustained by the evidence and is contrary to law. This assignment is well taken because we have now ruled that:

(1) Devereux did not provide "hospital" services to Patricia Drumm.

(2) Appellee is not entitled to any Basic Benefits.

(3) At most, only some of the services provided Patricia are covered by Supplemental Benefits.

(4) Appellee's failure to introduce into evidence an itemized bill or any other evidence of the type of services offered Patricia with Devereux's corresponding charge for

these services prevents any partial recovery of Devereux's fee under Supplemental Benefits.

(5) The mere listing of "milieu therapy" as the type of service and $12,000, Devereux's full fee as the corresponding charge, may not be construed as an "itemized bill" under the Plan. Such an interpretation of the Plan would amount to an impermissible judicial extension of an insurance contract beyond the limits contemplated therein.

(6) Dr. Rubin's testimony is inadmissible as a substitute for an itemized bill.

(7) David Hunt's testimony, though admissible, contains no information which may substitute for an itemized bill.

## V.

Blue Cross of Northeast Ohio additionally asserts that its motion for dismissal and final judgment in its favor made at the end of plaintiff's case was erroneously denied. We agree with this assertion, and accordingly grant the motion for dismissal and find judgment in favor of Blue Cross of Northeast Ohio.

Appellee's claim is based solely on "Supplemental Benefits." The record contains uncontradicted testimony that appellant Health Care Mutual Association underwrites the Supplemental Benefits while Blue Cross of Northeast Ohio is involved only with Basic Benefits and has no connection of any kind with Supplemental Benefits (Tr. 209-10). In view of this state of the record, the trial court erred in granting judgment against both appellants.

The judgment of the trial court is accordingly reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

KRENZLER, P. J., and DAY, J., concur.