BONANZA OF CLEVELAND, INC.,
APPELLANT, *v.* FAIRFAX UNDERWRITERS
SERVICES, INC. ET AL., APPELLEES.

(No. 43563—Decided December 28, 1981.)

*Mr. Dale C. Eisenman,* for appellant.
*Mr. Neil E. Roberts,* for appellees.

MARKUS, J. This appeal concerns an aviation insurance policy exclusion which denies coverage unless the aircraft pilot is named or described in the policy. The trial court granted summary judgment, dismissing the insured's action for reimbursement of damage to the aircraft in an emergency landing. The insured appeals, arguing that genuine issues of material fact remain unresolved.[1] We disagree.

It is undisputed that the defendant-insurer had issued to the plaintiff-insured a policy affording protection against physical damage to this aircraft, for the period from March 30, 1978 to March 30, 1979. On March 16, 1979, the plane was involved in a crash landing at Burke Lakefront Airport in Cleveland. Item 7 on the "Declarations" page of the policy provides:

"PILOTS: The coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following pilots who hold a current and valid medical certificate from the Federal Aviation Agency and who are properly certified for the flight involved. (See Endorsement No. 1)"

Endorsement No. 1 provides in pertinent part:

"In consideration of the premium charged, it is agreed that *Item 7 PILOTS of the Declarations — Part A* shall be completed to read as follows:

"1. Any person who is a bonafide [*sic*] member of Bonanza Corporation of Cleveland and has at least a private or commercial pilot certificate with a minimum of 500 total logged flying hours including at least 50 hours in retractable gear aircraft of which not less than 10 hours shall have been in make and model aircraft being flown; otherwise,

"2. JOWEL SAMUELS, provided he has a private or commercial pilot certificate with a minimum of 400 total logged flying hours including at least 350 hours in retractable gear aircraft of which not less than 200 hours shall have been in

---

[1] Plaintiff-appellant assigns the following claimed errors:

"I. The trial court erred in granting appellees' motion for summary judgment inasmuch as there exist genuine issues of material fact upon which reasonable minds could differ.

"II. The trial court erred in failing to apply the well-settled rule that insurance policies are to be construed in favor of the insured where ambiguity in the policy exists and the policy contains an [*sic*] exclusion provisions.

"III. The trial court erred in its determination that as a matter of law the insurance policy failed to provide coverage to appellant under the instant circumstances."

We will consider these assignments of error together since they are necessarily interrelated.

make and model aircraft being flown; otherwise,

"3. PAUL SINGERMAN, provided he has a private or commercial pilot certificate with a minimum of 350 total logged flying hours including at least 150 hours in retractable gear aircraft of which not less that 75 hours shall have been in make and model aircraft being flown; otherwise,

"4. JERRY STEINBERG, provided he has a private or commercial pilot certificate with a minimum of 175 total logged flying hours including at least 50 hours in retractable gear aircraft of which not less than 30 hours shall have been in make and model aircraft being flown."

Coverage applicable to physical damage to the aircraft is subject to the following express "Exclusion":

"This policy does not apply * * * (f) under Part III (physical damage) to loss occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declarations."

The evidentiary materials submitted to the court in support of the summary judgment motion included a copy of the insurance policy, the insured's answers to the insurer's interrogatories, and the deposition of Craig Reynolds.

At the time damage was sustained to the aircraft in this forced landing, Reynolds was the pilot. It is undisputed that Reynolds was never a "member" of Bonanza Corporation of Cleveland.[2] The policy defines "member" as follows:

"A member shall be defined as any person having an ownership interest in the flying club, or owning stock in the corporation (if the flying club is incorporated) for the primary purpose of sharing aircraft expenses with others."

The plaintiff's answers to interrogatories and Reynolds' deposition both acknowledge that he had no ownership interest in the plaintiff corporation.

It is widely held that clear and unambiguous pilot exclusion provisions are valid and enforceable. See *Edmonds* v. *United States* (C.A. 1, 1981), 642 F.2d 877; *Ideal Mut. Ins. Co.* v. *C.D.I. Constr., Inc.* (C.A. 5, 1981), 640 F.2d 654; *National Ins. Underwriters* v. *Carter, infra;* *Benton Casing Service, Inc.* v. *Avemco Ins. Co.* (La. 1979), 379 So.2d 225; *Omaha Sky Divers Parachute Club* v. *Ranger Ins. Co.* (1973), 189 Neb. 610, 204 N.W.2d 162. In this case, the policy's pilot exclusion is clear and unambiguous.

The insurer has a legitimate interest in pilot qualifications and the number of pilots who will operate the insured aircraft, in accepting the risk. *Benton Casing Service, Inc.* v. *Avemco Ins. Co., supra.* Owners may have a greater interest in protecting their property than non-owners. In this policy the insurer has further reason to require that pilots be members of the insured corporation, since a policy endorsement excludes liability insurance coverage for injury or damage to members or their families:

"ADDITIONAL EXCLUSION ENDORSEMENT

"In consideration of the reduced premium charged, it is agreed that Policy Provisions — Part B is amended to include the following additional exclusions:

"(q) Under Part I to injury to or destruction of property, including the loss of use thereof belonging to the individual members thereof or any member of their immediate families.

"(r) Under Part I to bodily injury,

---

[2] The insurer also argues that judgment should be granted as a matter of law because Reynolds did not have the specified ten hours of flight experience in the same "make and model" aircraft required for members not identified by name in the policy, even though Reynolds had flight ratings and experience exceeding the other pilot standards in the policy and more than four hundred hours in an allegedly equivalent model of the same make aircraft. We believe that there was sufficient evidence to permit a trial on that issue.

sickness or disease, including death at any time resulting therefrom, sustained by the individual members thereof or any member of their immediate families."

Thus, a requirement that the pilot be a member of the corporation is material to the risk assumed by the insurer.

The insured correctly asserts that ambiguities in a policy should be construed strictly against the insurer that authored its terms and liberally to favor the insured's coverage. *Munchick* v. *Fidelity & Casualty Co.* (1965), 2 Ohio St. 2d 303 [31 O.O.2d 569]. Where two reasonable interpretations are available, the construction favoring coverage is adopted. *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]. Exclusions or exceptions must be expressly provided or must arise by necessary implication from the policy language. *Edmonson* v. *Motorist Mut. Ins. Co.* (1976), 48 Ohio St. 2d 52 [2 O.O.3d 167]; *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144 [21 O.O.2d 418].

At the same time, policy terms must be given their plain, ordinary and usual meaning when no ambiguity exists. *Jirousek* v. *Prudential Ins. Co.* (1971), 27 Ohio St. 2d 62 [56 O.O.2d 34]; *Drumm* v. *Blue Cross* (1974), 40 Ohio App. 2d 421 [69 O.O.2d 373]. When words used in a policy have a plain and ordinary meaning, it is neither necessary nor permissible to construe a different meaning. *Olmstead* v. *Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St. 2d 212 [51 O.O.2d 285]; *Jackson* v. *Metropolitan Life Ins. Co.* (1973), 34 Ohio St. 2d 138 [63 O.O.2d 232].

In this case the pilot limitation appears in both the Declarations, as exemplified by Endorsement No. 1, and the Exclusions portion of the policy. In either event, it should be treated as an exclusion, since it restricts or suspends coverage which is otherwise fully effective. Cf. *Butche* v. *Ohio Cas. Ins. Co.,* *supra.* The insurer has the burden of proving that a policy exclusion applies. *Continental Ins. Co.* v. *Louis Marx & Co., Inc.* (1980), 64 Ohio St. 2d 399 [18 O.O.3d 539]. Here, the insured admits that the pilot was not a member of the corporation, so he was not an authorized pilot by the terms of the policy.

The insured claims that the pilot limitation clause should not control on the ground that it conflicts with another policy provision, or that the two provisions together create an ambiguity. To support that argument, the insured cites the policy language in Part I (Liability) which identifies the persons insured:

*"Persons and Organizations Insured*

"The following are Insureds under Part I:

"The Named Insured and any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the permission of the Named Insured."

However, the insured's reliance on that policy provision is misplaced.

The quoted provisions describing persons insured in Part I (Liability) have no counterpart in the policy provisions for Part III (Physical Damage). The present claim arises under Part III (Physical Damage) of the policy. Therefore, the inclusion of that definition of persons insured in an unrelated portion of the policy cannot create an ambiguity here. Moreover, the definition of insured does not conflict with the pilot limitation exclusion, which suspends coverage when a pilot not authorized by the policy flies the plane. When a pilot authorized by the policy is flying the plane, the persons described as additional insureds are protected against liability if the plane's actual use is with the permission of the named insured corporation. Those additional insureds might be the pilot individually, passengers in the front or back seat, or other persons or companies responsible for the conduct of any of them. The definition of insured persons identifies the persons or companies who can claim protection from the insurer, *if the policy is effective and no exclusion applies.* In this case

an exclusion clearly applies so no coverage is afforded to anyone, regardless of whether permission was given by the insured for the flight.

That issue was considered and resolved by the California Supreme Court in *National Ins. Underwriters* v. *Carter* (1976), 17 Cal. 3d 380, 131 Cal. Rptr. 42, 551 P.2d 362. In the *Carter* case, the insured claimed the same supposed ambiguity between the definition of persons insured and the pilot limitation clause. The court said:

"Defendants insist * * * that the policy is ambiguous in that the insuring clause purports to cover all permissive users while the pilot exclusion clause limits, or at the least reduces, such coverage. However, defendants fail to recognize that the two provisions, the insuring and exclusionary language, fulfill two different functions. The insuring provision, on the one hand, has as its purpose the definition of those persons who, in addition to the named insureds, may claim coverage and protection with respect to accidents *to which the policy applies*. The pilot exclusion clause, on the other hand, specifies that *the policy does not apply* unless the plane is piloted by a person named in that clause. The former clause does not purport to touch upon the subject of pilots' qualifications, and the latter clause does not attempt to describe those persons who are deemed to be the 'insured.' Contrary to the defendants' assumption, the two provisions act independently of each other. They are in harmony while performing different offices." *Id.* at 385.

We agree with that analysis.

Since the undisputed evidence establishes that the pilot was not authorized by the policy to fly the plane, and since a clear and unambiguous exclusion suspends coverage while the plane is piloted by such an unauthorized person, no coverage applies here. There is no genuine issue of material fact, and the trial court properly granted summary judgment to the defendant insurer.

Therefore, we affirm.

*Judgment affirmed.*

PATTON, P.J., and CELEBREZZE, J., concur.